FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAY -3 AM 9:14

U.S. DISTRICT COURT
N.D. OF ALABAMA

NATHANIEL GOREE, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. 98-PWG-0486-S
)
CITY OF BIRMINGHAM, ET AL., )      **ENTERED**
)
Defendants. )      MAY - 3 1999

MEMORANDUM OF OPINION

Plaintiff filed this action alleging that this court has federal question jurisdiction over plaintiff's § 1983 claim for inadequate medical attention and supplemental jurisdiction over plaintiff's state law claims for assault and battery and negligence.[1/]

This matter is before the court on the motions for summary judgment filed by defendants. (Documents #33 and #38). Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each

---

[1/]    On October 19, 1998 plaintiff moved to voluntarily dismiss claims for excessive force and negligent failure to train. (Document #29). The motion to dismiss was granted on October 22, 1998. (Document #30).



essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if in disputed, viewed in the light most favorable to plaintiff. In 1995 plaintiff suffered a fracture of the navicular which was healing on December 29, 1995. (Plaintiff's Exhibit F at 12). Plaintiff was to use a wrist splint and return for repeat x-rays in three weeks. *Id.* Plaintiff did not return to his physician for x-rays as scheduled. *Id.* On August 8, 1996 at 9:40 p.m. plaintiff was arrested by defendants Lockett and Irwin. Plaintiff wore a splint at the time of his arrest. Plaintiff asked that the officers handcuff him on top of the splint. (Plaintiff's Exhibit H at 88). Defendant Irwin told defendant Lockett not to worry about the splint. Defendant

Lockett then removed the splint and handcuffed plaintiff.[2] (Plaintiff's Exhibit H at 89). Plaintiff immediately stated that his arm was hurting and asked that the cuffs be loosened; however, the cuffs were not loosened (Plaintiff's Exhibit H, p.90,93) and were not removed until plaintiff arrived at the jail about an hour later. (Plaintiff's Exhibit H, p.90,33; plaintiff's Exhibit A).[3] Within twenty (20) minutes of arriving at the jail, plaintiff reported to a supervisor that his wrist was hurting. (Plaintiff's Exhibit H, p.33). Plaintiff's wrist appeared to plaintiff to be "swollen, blue, cuff marks around it where it had swollen." (Plaintiff's Exhibit H at 33).

Plaintiff was registered at the Cooper Green Emergency Room at 12:09 a.m. on August 9, 1996. (Plaintiff's Exhibit G). Neither the emergency room physician who saw plaintiff less than three hours after his arrest nor Dr. Slappey, plaintiff's physician who saw plaintiff four days after the arrest, saw any evidence of handcuff injury. (Defendants' Exhibit B at 38-39). On August 12, 1996 Dr. Slappey diagnosed plaintiff as having a non-union on the left navicular; however, he testified that the handcuffing would not have affected the non-union. (Defendants' Exhibit B at 26,28,46-47,53). Dr. Slappey further testified that handcuffing plaintiff behind his back could and probably did cause plaintiff more pain than if the wrist had remained in the splint and stationary. (Plaintiff's Exhibit F at 50-51).

---

[2] Defendants Lockett and Irwin both testified that plaintiff removed the splint himself without prompting from them. (Defendants' Exhibit D at 12-13; Defendants' Exhibit E at 52-53).

[3] Defendants Lockett and Irwin testified that plaintiff never made any comment about his wrist hurting. (Plaintiff's Exhibit J at 65; Defendants' Exhibit E at 45,53,86-91).

3

Plaintiff alleges that the defendant officers were deliberately indifferent to plaintiff's serious medical needs in two ways:

    (1)    defendant Lockett removed plaintiff's splint;[4/]

    (2)    defendants delayed plaintiff receiving medical attention following his arrest.

Defendants argue that they are entitled to qualified immunity on the § 1983 claim for inadequate medical treatment. In *Jenkins by Hall v. Talladega City Board of Education*, 115 F.3d 821, 823 (11th Cir. 1997), *cert. denied*, ___ U. S. ___, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997), the Court of Appeals for the Eleventh Circuit clearly and concisely summarized the principles of qualified immunity which guide this court in determining defendants' entitlement to qualified immunity:

> "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' *Lassiter [v. Alabama A & M University]*, 28 F.3d [1146] at 1149 [(11th Cir. 1994) (en banc)] (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow

---

[4/]    Although the court is of the opinion that the removal of the splint would relate more properly to the excessive force claim which was dismissed on October 22, 1998 than to the deliberate indifference claim, the court will nonetheless address the claim under deliberate indifference as deliberate indifference encompasses intentional interference with prescribed treatment. *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985).

4

> or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances.*" *Lassiter*, 29 F.3d at 1150.

115 F.3d at 823. The court further noted:

> In this circuit, the law can be "clearly established" for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose. *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996) (citing *Courson v. McMillian*, 939 F.2d 1479, 1497-98 & n.32 (11th Cir. 1991)).

115 F.3d at 826, n.4.

The Due Process Clause of the Fourteenth Amendment requires a state to provide a pretrial detainee "with some minimal level" of "such basic necessities as food, living space, and medical care." *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985), *cert. denied,* 475 U.S. 1096 (1986); *see also Lancaster v. Monroe Co., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997). The due process rights of a pretrial detainee "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983). In *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), "the Supreme Court held that deliberate indifference to [a convicted prisoner's] serious medical needs is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). A two-part analysis is employed in determining whether an Eighth Amendment violation has occurred. "First, we must evaluate whether there was evidence of a serious medical need; if so, we must then consider whether [the defendant's] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). The first inquiry is

5

objective; the second inquiry is subjective. *See Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1186 (11th Cir. 1994).

"'[A] "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d at 1187 (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N.H. 1977)). In *Hill* the court recognized:

> Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation.

*See also Lancaster*, 116 F.3d at 1425. "[T]he medical need of the prisoner need not be life threatening" to be considered "serious." *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988).

The second part of the inquiry–whether the response of the defendant amounted to deliberate indifference–is itself a two-part determination. A defendant may be held liable for an Eighth Amendment violation only if he had "knowledge of the [plaintiff's] particular medical condition," *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d at 1191 (emphasis omitted), *and* he acted intentionally or recklessly to deny or to delay access to medical care" or to interfere "with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. at 104-05. *See also Mandel v. Doe*, 888 F.2d at 788. *See generally Farmer v. Brennan*, 511 U.S. 825, 833-842 (1994). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct

prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Mere negligence or medical malpractice" on the part of the defendant is not sufficient to support an Eighth Amendment claim. *Mandel v. Doe*, 888 F.2d at 787-88. *See also Barfield v. Brierton*, 883 F.2d 923, 939 (11th Cir. 1989). Therefore, an accident or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.*

Plaintiff had last seen his doctor on December 29, 1995 at which time the x-rays showed there was a healing fracture of the navicular. (Plaintiff's Exhibit F at 12; Defendant Officers' Exhibit B at 39). Dr. Slappey testified "He was to continue to go slow with activities. He was to use the wrist splint that we'd given him still because of the navicular fracture, and he was to return in three weeks for repeat x-rays." (Plaintiff's Exhibit F at 12). Plaintiff did not see Dr. Slappey again until August 12, 1996–four days after plaintiff's arrest–at which time the diagnosis was a nonunion of the left navicular. (Plaintiff's Exhibit F at 12). The diagnosis of nonunion of the left navicular had not been made at the time of plaintiff's arrest. Further, the splint "prescription" had expired prior to the arrest. Thus, there was not a diagnosis of a serious medical need on the date of plaintiff's arrest.

The court must next determine whether plaintiff's medical need was so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Both defendant

7

officers admit that plaintiff was wearing a splint when he was arrested. Plaintiff testified that he "asked if him [Lockett] would he go ahead and just put the cuffs on top of the brace and not remove it because I needed it" (Plaintiff's Exhibit H at 36) "because something was wrong with my arm." (Plaintiff's Exhibit H at 88). Plaintiff further testified that Lockett then ripped the brace off, cuffed him and pushed him in the car. (Plaintiff's Exhibit H at 88-89). Plaintiff testified on cross examination by his counsel that he told Lockett "the arm had been broken and that it still hurt, the reason why I was wearing the splint." (Plaintiff's Exhibit H at 148).

Plaintiff testified that as soon as he was cuffed, he asked if he [unspecified defendant] would loosen the cuffs. (Plaintiff's Exhibit H at 90, 93). Plaintiff testified that he told the supervisor at the jail about twenty minutes after arriving at the jail that he "was hurting and felt like they had broken my wrist again, reinjured my wrist, and I needed some kind of support on it." (Plaintiff's Exhibit H at 33).

Dr. Slappey testified that on August 12, he did not see any physical evidence that plaintiff had a handcuff injury and that the Emergency Room sheet did not show any evidence of handcuff injury. (Officers' Exhibit B at 38-40).

Even though plaintiff told the officers that he had broken his arm or that something was wrong with his arm and that he still needed the splint, there was nothing obvious from plaintiff's arm that would have alerted defendants to recognize the necessity that plaintiff's splint not be removed or that plaintiff receive emergency medical treatment immediately following his arrest. The fact that the emergency room sheet did not describe any injury to plaintiff's arm less than three hours after the handcuffing is particularly strong evidence that a lay person should not have recognized the

need for medical attention. The court concludes that plaintiff did not have a serious medical need at the time of the handcuffing.

With respect to the second part of the inquiry, defendants did not have knowledge of plaintiff's nonunion of the navicular. Further, defendants did not act intentionally or recklessly to delay access to medical care or to interfere with prescribed treatment. Plaintiff was seen in the Cooper Green Hospital Emergency Room less than three hours after his arrest. In *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990), the Fifth Circuit Court of Appeals held:

> Wesson's alleged injuries at the time of the incident at issue, swollen wrists with some bleeding, do not constitute such a "serious medical need" that any minor delay caused by the defendants in delivering Wesson to the care of medical personnel could be construed as "deliberate indifference."

In *Hill*, 40 F.3d at 1188 n.22, the Eleventh Circuit specifically cited *Wesson* as an example of a case in which "denial of medical treatment for 'superficial, nonserious' physical condition does not constitute an Eighth Amendment violation."

Finally, plaintiff testified that the conduct of the officers in taking his splint off and cuffing him caused permanent injury to his wrist. (Officers' Exhibit F at 112). Plaintiff was already on disability because of his "mental condition." (Officers' Exhibit F at 63-64). Plaintiff testified that he planned to work again some day but "this [wrist injury] kind of knocks that out." In contrast to plaintiff's testimony is the testimony of plaintiff's physician, Dr. Slappey, who testified that the handcuffing would not have affected the nonunion. (Officers' Exhibit B at 28). Dr. Slappey further testified that a delay in treatment would not affect an old navicular fracture because the treatment is going to be the same surgical procedure. (Officers' Exhibit B at 53). Plaintiff has thus failed to

9

introduce any medical evidence showing his navicular fracture was exacerbated in any way by the delay. Further, officer defendants have introduced medical evidence that plaintiff's condition was **not** exacerbated.

The law was not clearly established in 1996 that the removal of a wrist splint and a three hour delay in obtaining medical treatment for an injury to the wrist following a handcuffing would violate a pre-trial detainee's Fourteenth Amendment due process rights; therefore, defendant officers are entitled to qualified immunity on this claim.

Plaintiff alleged generally in the second amended complaint that:

> The defendant Birmingham ratified and adopted the acts of the individual officers and, therefore, these violations constitute the policy of the City of Birmingham.

(Plaintiff's Second Amended Complaint, ¶ 12).

In his response to the motion for summary judgment plaintiff has not argued specifically how the City of Birmingham ratified and adopted the acts of the officers. There is no allegation of personal involvement by the City of Birmingham in the incident which is the basis of plaintiff's complaint.[5] The doctrine of *respondeat superior* is unavailable in actions brought under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979); *see also Williams v. Bennett*, 689 F.2d 1370 (1982), *cert. denied*, 464 U.S. 932 (1983). Absent some allegation that the City of Birmingham knew of, sanctioned, participated in or was otherwise "affirmatively linked" to the acts here complained of, the claim against the City of Birmingham is insufficient to state a cause of action under 42 U.S.C. § 1983. *See Gilmere v. City*

---

[5] Further, as previously noted, plaintiff's negligent failure to train claim was dismissed on October 22, 1998.

*of Atlanta*, 774 F.2d 1495 (11th Cir. 1985), *cert. denied*, 476 U.S. 1115 (1986). Accordingly, this action is due to be dismissed as to defendant City of Birmingham.

While this court has supplemental jurisdiction over plaintiff's state claims pursuant to 28 U.S.C. § 1367(a), the court declines to exercise supplemental jurisdiction as the court is dismissing the only claim over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). Because resolution of plaintiff's state law claims depends on determinations of state law, those claims are best resolved by the Alabama courts. *See Baggett v. First National Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

Further, the court notes that plaintiff's state law claims will not be barred by the statutes of limitation in light of the tolling provision of 28 U.S.C. § 1367(d).

Based on the foregoing defendants' motions for summary judgment are due to GRANTED with respect to plaintiff's § 1983 claim for inadequate medical attention. The state claims for assault and battery and negligence are due to be DISMISSED without prejudice.

A separate judgment consistent with this memorandum opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 30th day of April, 1999.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE